# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TUS' INVESTMENT, LLC** | * | **CIVIL ACTION NO.:** |
| **Plaintiff** | * | **2:16-cv-15728-JTM-MBN** |
| | * | |
| **VS.** | * | **SECTION "H" (5)** |
| | * | |
| **MC SPA FRANCHISE, LLC, MARY CHAU,** | * | **JUDGE** |
| and **ANDY CHAU** | * | **JANE TRICHE MILAZZO** |
| **Defendants** | * | |
| | * | **MAGISTRATE** |
| | * | **MICHAEL B. NORTH** |

**************************************************************************

## VERIFIED AMENDED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Tus' Investment, LLC, who files this Amended Complaint, pursuant to the Order of this Honorable Court dated October 26, 2016, as follows:

I.

Tus' Investment, LLC amends Paragraphs 1, 2, 3 and 4 of its original Complaint (Rec. Doc. 1) as indicated below to read in its entirety as follows:

### THE PARTIES

1.      Plaintiff, Tus' Investment, LLC, is a Louisiana limited liability company licensed to do and doing business in the Parish of Jefferson, State of Louisiana within the district of this Honorable Court, whose members are:

a.   Kevin Khoi Nhan, a Louisiana citizen and person of full age of majority domiciled in the Parish of Jefferson, State of Louisiana within the district of this Honorable Court, and

      b.   Kim Ngan Tu, a Louisiana citizen and person of full age of majority domiciled in the Parish of Jefferson, State of Louisiana within the district of this Honorable Court.

For purposes of diversity jurisdiction, Tus' Investment, LLC is a citizen of Louisiana.

2.     Defendant, MC Spa Franchise, LLC, is a Florida limited liability company not licensed to do, but doing business in the State of Louisiana within the district of this Honorable Court, whose members are:

      a.   Mary Chau, also known as Hang Duyen Chau, a Florida citizen and a person of full age of majority domiciled in the State of Florida, and

      b.   Andy Chau, a Florida citizen and person of full age of majority domiciled in the State of Florida.

For purposes of diversity jurisdiction, MC Spa Franchise, LLC is a citizen of Florida.

3.     Defendant, Mary Chau, also known as Hang Duyen Chau, is a Florida citizen and person of full age of majority and the part owner of MC Spa Franchise, LLC domiciled in the State of Florida.

4.     Defendant, Andy Chau, is a Florida citizen person of full age of majority and the part owner of MC Spa Franchise, LLC domiciled in the State of Florida; Defendants Mary Chau, Andy Chau and MC Spa Franchise, LLC are collectively referred to herein as Franchisor.

5.     Franchisor claims to be a franchisor that sells franchises in the United States for the establishment and operation of a spa/massage and nail care business.

6.     On or about November 9, 2014, Plaintiff purchased its rights to franchise from the Franchisor signing three Franchise Agreements all in the New Orleans, LA area.

7.     Plaintiff, upon entering into the Franchise Agreements, paid to franchisor an initial franchise fee of $86,000.00.

8.     Plaintiff, pursuant to the terms of the Franchise Agreements, was entitled to the rights to operate the franchise and receive the appropriate guidance and service from franchisor.

9.     Pursuant to the Franchise Agreements, Plaintiff had a term of five years with rights for additional five years successful terms.

10.    Plaintiff, based on the representations of the Franchisor, opened locations, and invested substantial monies in the franchises, later discovering there were misrepresentations and omissions made concerning various aspects of the franchise and expertise of the franchisor as will be detailed herein.

11.    Plaintiff was given an opportunity to review a Federal Disclosure Document ("FDD") which is incorporated by reference into a Franchise Agreement.

12.    Plaintiff has complied with all of the requirements of the MC Franchise System, however, Franchisor has not maintained its agreements and representations.

## JURISDICTION AND VENUE

13.    This is a civil action whereby Plaintiff seeks damages for fraudulent misrepresentation, negligent misrepresentation, unjust enrichment, breach of contract and the implied covenant of good faith and fair dealing, violation of Florida's Deceptive Trade Practices Act, and violation of Louisiana's Unfair Trade Practices and Consumer Protection Law.  Plaintiff also seeks declaratory judgment that the Franchise Agreements are rescinded and null and void and that Plaintiff is permitted to compete against Franchisor.  Finally, Plaintiff seeks preliminary and permanent injunctive relief enjoining Franchisor from enforcing the Franchise Agreements, including, the post-termination covenant not to compete contained in the Franchise Agreement in

paragraph 17 and to otherwise rescind or declare the Franchise Agreement to be unenforceable because of Franchisor's fraudulent inducement and breach of the Franchise Agreements.

14.     This Court has jurisdiction of this action under and by virtue 28 USC §1332, in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, and by virtue of the Federal Declaratory Judgment Act 28 USC §§ 2201 and 2202.

15.     This Court is authorized to grant declaratory judgment under the Federal Declaratory Judgment Act 28 USC §§ 2201 and 2202, implemented through Rule 57 of the Federal Rule of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

16.     Venue in this district is proper under 28 USC § 1391 because a substantial number of the acts and transactions forming the basis of this Complaint took place within this district.

17.     Franchisor is subject to jurisdiction in this district because they are engaged in the wrongful acts alleged in this Complaint within this district, caused injury within this district, contracted to provide and provided goods and services in this district, and offered or sold or participated in the offer or sale to Plaintiff in this district.

## THE BACKDROP FOR THE FEDERAL TRADE COMMISSION'S FRANCHISE DISCLOSURE REQUIREMENTS

18.     In the United States, the sale of a "franchise" is regulated in much the same fashion as the sale of a secured investment. Franchisor is prohibited from making projections of financial performance to prospective franchisees unless substantiated and by highly-detailed disclosure requirements (intended to provide prospective franchisees with all of the material information needed to make an informed decision).

19.    As reflected in the FTC's Statement of Basis and Purpose Relating to Disclosure

Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, Bus.

Franchise Guide (CCH) ¶ 6300, *et seq.,* the FTC made the following material findings:

A.    "[M]isrepresentations and failure to disclose material facts are widespread in franchising." Bus. Franchise Guide (CCH) ¶ 6305.

B.    "On the basis of the record in this proceeding, the Commission concludes that franchises have been marketed through (A) misrepresentation of material facts relevant to the nature and value of the franchise; (B) unsubstantiated claims regarding the potential sales, income, gross or net profit of franchises; (C) unfair refusal by franchisors to honor refund provisions and (D) failure to disclose material facts about the franchise offering." *Id.*

C.    Many franchisors have made a practice of making "get rich quick" claims in advertisements and other promotional materials, and "such 'get rich quick' claims frequently either are unsubstantiated by the franchisor, or they misrepresent material facts with regard to the 'potential earnings' of a particular franchise business." *Id.* at ¶ 6304.

D.    "[T]he record also discloses that many franchisors have highlighted the atypical success of a few franchisees without disclosing the non-representative nature of these claims. Such representations are an unfair and deceptive trade practice." *Id.* at ¶ 6307.

E.    That said, "For most prospective franchisees there is quite simply no source other than the franchisor for much of the information necessary to make an informed investment decision." *Id.* at ¶ 6304.

F.    "The record establishes that prospective franchisees are at an informational disadvantage with respect to the franchisor in evaluating the franchise offering because of the setting in which franchises are sold. Because of this informational imbalance prospective franchisees do not have information about material aspects of the franchise and frequently are not even aware that they lack such information. Without such information, however, prospective franchisees cannot evaluate the value of the franchise offering. The record establishes that franchisors take advantage of the informational imbalance to sell franchises without disclosure of material facts." *Id.* at ¶ 6309.

G.    "Without such information, prospective franchisees lack material information concerning the prices, the risks, the potential profitability, and even the nature and contents of the franchise offering." *Id.*

H.   "[T]he item being offered - the franchise opportunity – is complex, and the information necessary to test the accuracy of representations lies almost solely within the possession of the franchisor. Indeed, even if available, the search costs in obtaining such information would be prohibitive. Accordingly, prospective franchisees, of necessity, have to rely on the accuracy of the representation of the franchisor as to the profitability of the franchise." *Id.* at ¶ 6307 (emphasis added).

I.   "The failure to disclose material facts concerning the franchise offering, where the prospective franchisee is at an informational disadvantage, violates public policy encouraging informed consumer purchasing decisions." *Id.* at ¶ 6309.

J.   "Disclosure requirements are effective means of curbing the 'half-truth' .and the failure to disclose used in marketing franchises because they provide prospective franchisees with at least the minimal information needed to make an informed decision whether to enter the franchise relationship. By specifying the type of information which should be provided, the rule prevents franchisors from selectively disclosing only the information which is favorable to them." *Id.* at ¶ 6312.

K.   Going forward, "If franchisors choose to make representations concerning profits, income or sales to prospective franchisees or in the media," franchisors should be required to make "certain disclosures which are intended to give the prospective franchisee information which will enable him or her to evaluate the merits of the franchisor's claim." *Id.*

20.   In 1979, the FTC adopted a trade regulation rule governing the sale of franchises that is roughly modeled on the SEC Act. *See* 16 C.F.R. Part 436 (the "FTC Franchise Rule").

21.   The FTC's Amended Franchise Rule requires a franchisor to provide a prospective franchisee with certain disclosures, contained in a written Franchise Disclosure Document ("FDD"), prior to the purchase of the franchise. *See* 16 C.F.R. § 436.1, *et seq.*

22.   Among those FDD disclosures is that required under Item 19 of the FTC's Amended Franchise Rule. Item 19 of the Franchise Disclosure Document ("FDD") obligates a franchisor to present any "financial performance representation" in a detailed format that, among other things,

identifies the percentage of existing system units which have actually achieved the financial results set forth in the franchisor's financial representation. *See* 16 C.F.R. § 436.5(s).

23.     As noted below Defendants failed to honor this disclosure obligation and, otherwise, misled Plaintiff into purchasing franchises from Franchisor.

## ALLEGATIONS COMMON TO ALL COUNTS

24.     There are material issues concerning Franchisors' conduct, including but not limited to, misrepresentations concerning their expertise and knowledge of the services and products offered and sold to Plaintiff, fraudulent earning claims, misrepresentation concerning earnings, vendors, expertise in site selection, build outs, failure to uphold even minimal standards in operating a franchise system, failure to provide proper and adequate support and assistance, failure to provide proper training, misrepresentations as to the alleged expertise and sophistication of franchisor, lack of proper assistance by franchisor, failure to properly maintain the high standards supposedly set by franchisor in connection with its franchise system, the failure to provide assistance to the franchisee in the establishment of its franchise, the failure to create, improve and/or maintain brand recognition or brand loyalty, the direction to franchisees to purchase faulty and untested spa equipment, tools, point of sale system and software, and numerous other breaches and misrepresentations in connection with the Franchise Disclosure Document ("FDD"), Franchise Agreements and the system, as are detailed below:

   a.   Specific representations prior to entering into the Franchise Agreements as to gross sales to be achieved each year by Plaintiff;

   b.   Pursuant to the FDD, Item 4 concerning bankruptcy disclosures, the FDD represented that "no bankruptcy information is required to be disclosed in this ITEM. Contrary to this false misrepresentation, (Mary) Chau, along with Andy Chau, filed for bankruptcy on December 17, 2010, which was then closed on September 29, 2015 for voluntary Chapter 7 Bankruptcy in the United States District Court for the Middle District of Florida (No. 6:10-bk,.2238-CCJ).

c. No mention was made that Plaintiff's first location in Harvey, Louisiana was the first unit in Franchisor's system and was used by Franchisor as the "guinea pig" for Franchisor to learn how to operate a franchised business. Pursuant to Item 1 of the FDD, Franchisor represented that Myhue Spa, Inc. "owns and operates 1 business of the type being franchised in Ocoee, Florida, since January 2011." Also, Item 1 represented that Mary Chau Spa, Inc. "owns and operates 1 business of the type being franchised in Orlando, Florida, since January 2012." Both of these representations were and are false as neither of them was operating as MC Spa and/or MC Nailbar until a later date after Client had entered into the Franchise Agreements.

d. Franchisor required Plaintiff to purchase a certain specific POS system that was allegedly validated, tested and being used by Franchisor. The Franchisor-required POS system was a complete failure from the very beginning and, to which Franchisor had no answers or resolutions for, the multitude of issues occurring pursuant to the Franchisor's required POS system;

e. An integral part of the system as represented by Franchisor was the "membership" concept to which the alleged proprietary and functioning POS system was to implement and track, to which the POS system could do neither or, for that matter, anything worthy of a suitable POS system; the POS system was unable to track membership, provided inaccurate accounting, could not track gift cards, could not produce proper royalty reports, among other issues;

f. Franchisor provided inadequate guidance, assistance or support in connection with its required POS system only providing an inept staff who knew very little about the spa business/concept or operating the POS system;

g. Franchisor, instead of resolving the POS system, decided to change POS systems and to charge the franchisees, including Plaintiff, a monthly fee of $89.00 without any consent or notice to Plaintiff other than a phone call telling Plaintiff that there would be a new system. Further, Franchisor failed to provide any type of training in connection with its "new" POS system;

h. Franchisor failed in its representations to provide marketing efforts, including pre-grand opening, grand opening and ongoing marketing support. Little or no support was provided and all contrary to the representations of Franchisor and its representatives;

i. An integral part of the franchise system was the representation and sale of the MC Spa massage chairs. As it turns out, Franchisor and/or its representatives never utilized any of the massage chairs that Plaintiff was required to purchase. Further, there were significant delays in Plaintiff obtaining the required massage chairs, which resulted in at least there (3) months of lost revenue and expenses;

j. The massage chairs and stools were never tested by Franchisor or its representatives and created numerous problems, including plumbing issues that Plaintiff had to fix on its own

and at its own costs and expense. Franchisor had no idea how to resolve the problem, nor even offered to compensate Plaintiff for the repairs.

k.     Franchisor required Plaintiff to purchase certain products and supplies directly from Franchisor that were not proprietary and which were contrary to representations that the pricing of such would be at a discount than that on the open market. Contrary to these representations, the products were above open market prices and not 10-20% less than open market as represented by Franchisor;

l.     Franchisor represented that there would be at least monthly conference calls or webinars with all franchisees to discuss any and all issues within the system. Franchisor, to date, has never established such conference calls or webinars and have left Plaintiff to fend for itself, as has been the case since day one of Plaintiff's' relationship with Franchisor;

m.    Plaintiff reached out on numerous occasions for assistance from Franchisor, which Franchisor ignored or, in turn, would look for a way to blame Plaintiff for the issues rather than trying to resolve the issues created by Franchisor;

n.     Franchisor represented to Plaintiff a certain price for the spa chairs and stools and then, during the Plaintiff's build-out of the locations, Franchisor substantially increased the prices all contrary to its prior representations;

o.     Pursuant to advertisements by Franchisor, it is represented that the MC Spa and Nailbar businesses "provide a successful business model" which it was not;

p.     Pursuant to Franchisor representations and advertisements, "the MC Spa franchise and the Nailbar club are based on affordable memberships." Obviously, the memberships are a material and integral part of the system to which Franchisor provided POS systems that do not implement such integral parts of the alleged franchise system;

q.     Item 2 of the FDD failed to list Andy Chau as a principal officer or individual who will have management responsibility relating to the sale or operation of franchises offered by the FDD.

r.     Item 7 of the FDD represented that the total range of costs for a Nailbar franchise would be between $161,117.00 and $234,800.00. In connection with the development of the Harvey, Louisiana MC Nailbar, Plaintiff has spent in excess of $359,000.00 which far exceeds the representation made in Item 7 by Franchisor;

s.     In Item 8, Franchisor represents "these standards and specifications are based on our affiliates' experience in operating businesses of the type we are franchising and through research and testing in our affiliates' businesses," despite the fact that no research or testing had been done and in fact Franchisor used Plaintiff's design and layout, opening at a later point and time and the affiliates were not operating as MC Spa;

t.     Item 8 refers to Franchisor negotiating buy-in discounts; there were none;

u.   Item 11 represents as to Franchisor's assistance, advertising, computer systems and training are full of misleading and blatant misrepresentations and empty promises. Franchisor failed to fulfill just about all of the Item 11 representations;

v.   Item 11 represents that "initial training program that covers material aspects of the operation of the franchised business." Further, Item 11 represents that "'Ms. Chau is our Chair and Owner and also President of our affiliates. Ms. Chau has over 25 years' experience in operating and managing beauty spas and nail bars"; however, there was no training as to the material aspects of the operation of the franchise business and Ms. Chau provided very little, if any, of the training and she had no experience operating an MC Spa franchise business. This representation also implies that the affiliates were MC Spa operations and, as noted above, were misrepresented by Franchisor and its principals;

w.   Contrary to its representation in Item 19 of the FDD, Franchisor and its principal made Financial Performance Representations;

x.   Prior to and after the signing of the Franchise Agreements, Franchisor and its representatives continued to make unlawful earnings claims that are not contained in Item 19 of the FDD;

y.   Earnings claim representations as to costs were made by Franchisor and its representatives in violation of the FTC Franchise Rule;

z.   Franchisor failed to and continues not to provide proper advertising and marketing;

aa.   Plaintiff was represented that Franchisor would provide in-depth, comprehensive, on-the-job training, which would include 100 hours of classroom training and 104 hours of on-the job training for the operation of the franchise system; franchisor training was minimal at best and was provided by trainers with no experience with the franchise system;

bb.   Franchisor misrepresented to Plaintiff how to proceed with the landlord for the Harvey franchise which already had a "Massage Envy" location in the center and assured Plaintiff that Plaintiff would be able to offer MC Spa's foot massages as part of the pedicure service-all contrary to reality;

cc.   Plaintiff, relying on the above misrepresentation, proceeded, ending up with the MC Spa/Nailbar concept that would cause it to forego massage services, which is the pillar of MC Spa's concept; without that service, the location is just a regular nail salon with no need to be part of the MC Spa franchise; in fact the location cannot offer the services noted on MC Spa's website;

dd.   Franchisor never performed any type of demographics nor had any working knowledge of the location for Plaintiff's franchise location; and

ee.   Franchisor provided what it called an "Operations Manual", but was nothing more than a facade and contained very little, if any, substantive information and very few details on

how to properly operate the franchised business, contrary to standards in the franchise industry.

ff.   Additional fraudulent misrepresentations were made by Franchisor in the Franchise Agreements:

1.   Franchisor represented that "Franchisor and its Affiliates have developed, and are in the process of further developing a system identified by the service marks "MC Spa" and "MC Nailbar" and relating to the establishment and operation of either…";

2.   Franchisor represented that the franchise has "distinguishing characteristics of the system [which] include: uniform standards and procedures for efficient business operation; procedures and strategies for marketing, advertising and promotion; customer service and development technique; distinctive interior and exterior layout and decor; other strategies, techniques and Trade Secrets and other Confidential Information; and the Confidential Operation Manual;"

3.   Franchisor represented that Franchisor has "high and uniform standards of quality, operations and service;"

4.   Franchisor represented that it would provide training in which Plaintiff would "successfully complete, to Franchisor's satisfaction, an initial training program pertaining to the operation and administration of the Franchised Business including, but not limited to, sales and marketing methods; financial control; maintenance of quality standards; customer service techniques, record keeping; and reporting procedures and other operational issues;"

5.   Franchisor represented that it would make available to Plaintiff at Franchisor's expense, one (1) of Franchisor's representatives, experienced in the System for the purpose of familiarizing Plaintiff's staff with the MC Spa techniques and for the purpose of providing general assistance and guidance in connection with the opening of the Franchised Business;

6.   Franchisor represented that "the reputation and goodwill of the System is based in large part on offering high quality services and products to its customers;"

7.   Franchisor represented that "gift cards must be honored and redeemed by the Franchised Business when presented in accordance with the procedures as specified in the Confidential Operation Manual;"

8.   Franchisor represented that "the membership package purchase shall be honored when presented in accordance with the procedure as specified in the Confidential Operation Manual;"

9.    Franchisor represented that it "shall be available to render advice, discuss problems and offer general guidance to Plaintiff by telephone, email, facsimile, newsletters and other methods with respect to planning, opening and operating the Franchised Business;" and

10.   It was represented that "Franchisor or Franchisor's representative shall make periodic visits...to the Franchised Business for the purpose of consultation, assistance and guidance with respect to various aspects of the operation and management of the Franchised Business."

**FRANCHISOR FRAUDULENTLY INDUCED PLAINTIFF TO EXECUTE THE FRANCHISE AGREEMENTS BY UNLAWFULLY MAKING FINANCIAL <u>PERFORMANCE REPRESENTATIONS</u>**

25.   Furthermore, Franchisor knew that the business sold to Plaintiff by Franchisor was a franchise and that the sale of which required Franchisor to have satisfied certain pre-sale disclosure obligations.

26.   Franchisor's aforementioned conduct, accordingly, satisfies the elements for Plaintiff's claims against Defendants for constructive fraud and/or fraudulent concealment.

27.   Franchisor fraudulently induced Plaintiff's to execute the Franchise Agreement by presenting Plaintiff's with a financial performance representation - the contents of which could be presented only according to the requirements of 16 C.F.R. § 436.5(s).

28.   Only the franchisor has accurate information regarding the financial performance reflected in the representations shared by Franchisor with Plaintiff.

29.   A franchisor has the choice to make a financial performance representation in Item 19 (i.e., 16 C.F.R. § 436.5(s)) and can then only speak to such disclosure as written in Item 19.

30.   16 C.F.R. § 436.5(s) provides that the following disclosure requirements need to be met if a franchisor, like Franchisor, elect to make any financial performance representation like that included in the representations presented to Plaintiff.

31. Defendants were obligated to make the following disclosures relating to financial performance representations, in writing, prior to Plaintiff's execution of the Franchise Agreement:

*(s) Item 19: Financial Performance Representation:*

A.   Begin by stating the following:

The FTC's Franchise Rule permits a franchisor to provide information about the actual or potential financial performance of its franchised and/or franchisor-owned, outlets, if there is a reasonable basis for the information, and if the information is included in the disclosure document. Financial performance information that differs from that included in Item 19 may be given only if (1) a franchisor provides the actual records of an existing outlet you are considering buying; or (2) a franchisor supplements .the information provided in this Item 19, for example, by providing information about possible performance at a particular location or under particular circumstances.

B.   If a franchisor does not provide any financial performance representation in Item 19, also state:

We do not make any representations about a franchisee's future financial performance or the past financial performance of company-owned or franchised outlets. We also do not authorize our employees or representatives to make any such representations either orally or in writing. If you are purchasing an existing outlet, however, we may provide you with the actual records of that outlet. If you receive any other financial performance information or projections of your future income, you should report it to the franchisor's management by contacting [name address, and telephone number], the Federal Trade Commission, and the appropriate state regulatory agencies.

C.   If the franchisor makes any financial performance representation to prospective franchisees, the franchisor must have a reasonable basis and written substantiation for the representation at the time the representation is made and must state the representation in the Item 19 disclosure. The franchisor must also disclose the following:

(i)   Whether the representation is an historic financial performance representation about the franchise system's existing outlets, or a subset of those outlets, or is a forecast of the prospective franchisee's future financial performance.

(ii)    If the representation relates to past performance of the franchise system's existing outlets, the material bases for the representation, including:

    a.    Whether the representation relates. to the performance of all of the franchise system's existing outlets or only to a subset of outlets that share a particular set of characteristics (for example, geographic location, type of location (such as free standing vs. shopping center), degree of competition, length of time the outlets have operated, services or goods sold, services supplied by the franchisor, and whether the outlets are franchised or franchisor-owned or operated).

    b.    The dates when the reported level of financial performance was achieved.

    c.    The total number of outlets that existed in the relevant period and, if different, the number of outlets that had the described characteristics.

    d.    The number of outlets with the described characteristics whose actual financial performance data were used in arriving at the representation.

    e.    Of those outlets whose data were used in arriving at the representation, the number and percent that actually attained or surpassed the stated results.

    f.    Characteristics of the included outlets, such as those characteristics noted in paragraph (3)(ii)(A) of this section, that may differ materially from those of the outlet that may be offered to a prospective franchisee.

(iii)    If the representation is a forecast of future financial performance, state the material bases and assumptions on which the projection is based. The material assumptions underlying a forecast include significant factors upon which a franchisee's future results are expected to depend. These factors include, for example, economic or market conditions that are basic to a franchisee's operation, and encompass matters affecting, among other things, a franchisee's sales, the cost of goods or services sold, and operating expenses.

(iv)    A clear and conspicuous admonition that a new franchisee's individual financial results may differ from the result stated in the financial performance representation.

(v)     A statement that written substantiation for the financial performance representation will be made available to the prospective franchisee upon reasonable request.

D.     If a franchisor wishes to disclose only the actual operating results for a specific outlet being offered for sale, it need not comply with this section, provided the information is given only to potential purchasers of that outlet.

E.     If a franchisor furnishes financial performance information according to this section, the franchisor may deliver to a prospective franchisee a supplemental financial performance representation about a particular location or variation, apart from the disclosure document. The supplemental representation must:

(vi)    Be in writing;

(vii)   Explain the departure from the financial performance representation in the disclosure document;

(viii)  Be prepared in accordance with the requirements of paragraph (s)(3)(i)-(iv) of this section; and

(ix)    Be furnished to the prospective franchisee.

*See id.*

32.    Defendants failed to comply with 16 C.F.R. § 436.5(s) by:

A.     Presenting Plaintiff with financial representation that was not included in the franchisor's FDD in violation of 16 C.F.R. §§ 436.5(s)(l) and (5);

B.     Presenting Plaintiff with financial representation which had no "reasonable basis" as required by 16 C.F.R. §§ 436.5(s)(l) and (3);

C.     Making financial representations without having "written substantiation" of the financial performance claims set forth in the representation as required by 16 C.F .R. § 436.5(s)(3);

D.     Presenting Plaintiff with a financial representation without identifying whether the content of the financial representation "is an historic financial performance representation about the franchise system's existing outlets, or a subset of those outlets, or is a forecast of the prospective franchisee's future financial performance" as required by 16 C.F.R. § 436.5(s)(3)(i);

E.     Presenting Plaintiff with a financial representation without identifying the "material bases" for its content as required by 16 C.F.R. §§ 436.5(s)(3)(ii) and (iii);

F.  Presenting Plaintiff with a financial representation without identifying whether its content "... relates to the performance of all of the franchise system's existing outlets or only to a subset of outlets that share a particular set of characteristics (for example, geographic location, type of location (such as free standing vs. shopping center), degree of competition, length of time the outlets have operated... and whether the outlets are franchised or franchisor-owned or operated)" as required by 16 C.F.R. § 436.5(s)(3)(ii)(A);

G.  Presenting Plaintiff with a financial representation without identifying the "dates when the reported level of financial performance was achieved" as required by 16 C.F .R. § 436.5(s)(3)(ii)(B);

H.  Presenting Plaintiff with a financial representation without identifying the "number of outlets with the described characteristics whose actual financial performance data were used in arriving at the representation" as required by 16 C.F.R. § 436.5(s)(3)(ii)(D);

I.  Presenting Plaintiff with a financial representation without identifying "the number and percent that actually attained or surpassed the stated results" amongst existing units as required by 16 C.F.R. § 436.5(s)(3)(ii)(E);

J.  Presenting Plaintiff with a financial representation without identifying the "[c]haracteristics of the included outlets ...that may differ materially from those of the outlet" offered to Plaintiff by Defendants as required by 16 C.F.R. § 436.5(s)(3)(ii)(F);

K.  Presenting Plaintiff with a financial representation without also providing Plaintiff, in writing, a "clear and conspicuous admonition that a new franchisee's individual financial results may differ from the result stated in the financial performance representation" as required by 16 C.F.R. § 436.5(s)(3)(iv);

L.  Presenting Plaintiff with a financial representation without also providing Plaintiff, in writing, a "statement that written substantiation for the financial performance representation will be made available to the prospective franchisee upon reasonable request" as required by 16 C.F.R. § 436.5(s)(5); and

M.  Presenting Plaintiff with a financial representation without explaining why Defendants failed to include the financial representation information in Defendant's FDD as required by 16 C.F.R. § 436.5(s)(5)(ii).

33.  Franchisor made the written representation in Item 19 of its FDD:

"We do not make any representations about a franchisee's future financial performance or the past financial performance of the company-owned or franchised outlets."

34.     All of the Defendants held themselves out to be one and the same and the alter ego of one another.

35.     Defendants are, as a matter of fact and law, the alter egos of one another; each of them is liable for their individual acts and liable for the acts of the other Defendants as well.

## COUNT I
## FRAUDULENT MISREPRESENTATION

36.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

37.     Prior to and after entering into the Franchise Agreement, Franchisor made the representation or omitted to disclose material information as stated in the previous allegations.

38.     Franchisor was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with Plaintiff which required Franchisor to impart correct information to Plaintiff.

39.     Franchisor knew or should have known that these representations were false.

40.     Plaintiff did not know, have reason to know, nor could have discovered, through the exercise of reasonable diligence, the falsity of the foregoing misrepresentations when made.

41.     Plaintiff reasonably and justifiably relied upon Franchisor's misrepresentations or omissions.

42.     As a direct, proximate, and foreseeable result of Franchisor's fraudulent misrepresentations and concealment, Plaintiff has been damaged.

43.     Franchisor is liable to Plaintiff for the damages caused by Franchisor's fraudulent misrepresentations.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**

44.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

45.     Franchisor supplied information or omitted to supply information to Plaintiff in the FDD sales and franchising requirements as stated in the previous allegations.

46.     Franchisor was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with Plaintiff which required Franchisor to impart correct information to Plaintiff.

47.     The information supplied by Franchisor was false.

48.     Franchisor knew or should have known that the information was supplied to guide Plaintiff in its business transactions.

49.     Franchisor was negligent in obtaining or communicating the false information.

50.     Plaintiff reasonably and justifiably relied on the false information and was induced into signing the Franchise Agreement based upon such information.

51.     As a direct and proximate result of Franchisor's negligent misrepresentation, Plaintiff has been substantially damaged.

52.     Franchisor is liable to Plaintiff for the damages caused by Franchisor's negligent misrepresentations.

**COUNT III**
**UNJUST ENRICHMENT**

53.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraph as though fully set forth herein.

54.     As noted above, Franchisor was enriched and received payments from Plaintiff.

55.     Plaintiff has been impoverished as a result of the actions of Franchisor and payments thereto.

56.     No legal cause exists to justify Defendants' enrichment at Plaintiff's expense.

57.     Franchisor should be compelled to return to Plaintiff the amount of all payments made by Plaintiff to Franchisor.

58.     Franchisor is liable to Plaintiff in an amount equal to all payments made by Plaintiff to Franchisor.

## COUNT IV
## BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST FRANCHISOR

59.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

60.     The Franchise Agreements here are contracts which impose on each party a duty of good faith and fair dealing in its performance and enforcement, such that, neither party can do anything to unfairly interfere with the right of the other party to receive the contract's benefit.

61.     Plaintiff did all that it was required under the Franchise Agreements.

62.     All conditions required for the Franchisor to perform have occurred.

63.     Franchisor's omissions unfairly interfered with Plaintiff's receipt of the franchise agreement's benefits.

64.     Franchisor's conduct did not comport with Plaintiff's reasonable expectation for performance under the contract.

65.     Franchisor breached the duty owed under the Franchise Agreements.

66.     Franchisor's breach of the Franchise Agreements caused damages to Plaintiff.

67.   Franchisor is liable to Plaintiff for the damages to Plaintiff caused by Franchisor's conduct.

## COUNT V
## VIOLATIONS OF FLORIDA'S DECEPTIVE TRADE PRACTICES ACT

68.     Plaintiff realleges and incorporates by reference previous allegations of this claim as if they were set forth in their entirety.

69.     Franchisor, by engaging in the above complaint of activity has engaged in unfair methods of competition, unconscionable practices and unfair deceptive acts or practices in the conduct of trade and commerce.

70.     Because of the above-mentioned activity, Franchisor has violated the Florida Deceptive and Unfair Trade Practices Act specifically section 501.204 which notes in subsection (2n) that due consideration great weight shall be given to the interpretation of the Federal Trade Commission, which has been referenced in the previous allegations of this complaint.

71.     Plaintiff has suffered losses as a result of the violations of the Florida Deceptive and Unfair Trade Practices Act and therefore seek the actual damages that he has suffered thereby plus attorneys' fees and court costs.

72.     Franchisor is liable to Plaintiff its actual damages, plus attorneys' fees and court costs under the Florida Deceptive and Unfair Trade Practices Act.

## COUNT VI
## VIOLATIONS OF LOUISIANA'S UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW

73.     Plaintiff incorporates by reference the previous allegations of this claim as if they were set forth in their entirety.

74.     By engaging the above conduct, franchisor has violated Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq., which prohibits unfair and deceptive methods of competition and unfair and deceptive acts.

75.     Plaintiff has suffered losses as a result of the violations of the Louisiana's Unfair Trade Practices and Consumer Protection Law and therefore seeks its actual damages, treble damages in the amount of three times its actual damages, reasonable attorney fees and costs, pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.

76.     Franchisor is liable to Plaintiff for its actual damages, treble damages in the amount of three times its actual damages, reasonable attorney fees and costs, pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401 et seq.

## COUNT VII
## DECLARATORY JUDGMENT - FRAUDULENT INDUCEMENT

77.     Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

78.     Prior to and after entering into the Franchise Agreement, Franchisor made the representation or omitted to disclose material information as stated in the previous allegations.

79.     Franchisor was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with Plaintiff which required Franchisor to impart correct information to Plaintiff.

80.     Franchisor knew or should have known that these representations were false.

81.     Plaintiff did not know, have reason to know, nor could have discovered, through the exercise of reasonable diligence, the falsity of the foregoing misrepresentations when made.

82.     Plaintiff reasonably and justifiably relied upon Franchisor's misrepresentations or omissions.

83.     As a direct, proximate, and foreseeable result of Franchisor's fraudulent misrepresentations and concealment, Plaintiff was fraudulently induced into entered into the Franchise Agreements.

84.     As a result of Franchisor's fraudulent inducement, the Franchise Agreements should be rescinded and declared null and void.

85.     Plaintiff further seeks a declaration, because of Franchisor's fraudulent inducement as alleged herein, they have no obligation for any past debts, past acts, future debts or future acts.

86.     Plaintiff further seeks a declaration that the Franchise Agreements be rescinded and declared null and void pursuant to 28 USC § 2201.

### COUNT VIII
### <u>DECLARATORY JUDGMENT – BREACH OF CONTRACT</u>

87.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.     Because of Franchisor's breaches of the Franchise Agreement as alleged, Plaintiff seeks to be excused from future performance under these Franchise Agreements and to rescind the Franchise Agreements and declare them void and to be permitted to compete with the Franchisor from their existing locations or otherwise.

89.     Specifically, Plaintiff seeks to be able to own an interest in or manage, operate or provide services within 25 miles of their current location, which is prohibited by paragraph 17.2.2.1 of the Franchise Agreement and to solicit existing customers as covered by paragraph 17.2.2.2 of the Franchise Agreement.

90.     Plaintiff further seeks a declaration, because of Franchisor's multiple breaches as alleged herein, they have no obligation for any past debts, past acts, future debts or future acts.

91.     Plaintiff further seeks a declaration that the Franchise Agreements be rescinded and declared null and void pursuant to 28 USC § 2201.

## COUNT IX
## INJUNCTIVE RELIEF

92.     Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

93.     Because of Franchisor's breaches of the Franchise Agreement as alleged, Plaintiff seeks a preliminary and permanent injunction prohibiting Franchisor from enforcing the Franchise Agreements.

94.     Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiff prays that its Amended Complaint be deemed good and sufficient, that Defendants, MC Spa Franchise, LLC, Mary Chau, and Andy Chau, be duly cited to appear and answer same within the delays allowed by law, and that following all due delays and legal proceedings, judgment be rendered in favor of Tus' Investment, LLC, and against Defendants, MC Spa Franchise, LLC, Mary Chau, and Andy Chau, jointly, severally and in solido in an amount reasonable in the premises, together with penalties and legal interest from date of judicial demand, and for all costs incurred, including attorney's fees, and all general and equitable relief that this Honorable Court deems fit and proper.

Plaintiff further prays for (1) a declaratory judgment that the Franchise Agreements are rescinded and are null and void, (2) a declaratory judgment that Plaintiff is permitted to compete with the Franchisor, and (3) a preliminary injunction and permanent injunction prohibiting Franchisor from enforcing the Franchise Agreements.

RESPECTFULLY SUBMITTED:

PIVACH, PIVACH, HUFFT,
THRIFFILEY & DUNBAR, L.L.C.
ATTORNEYS AT LAW


 /s/ Corey E. Dunbar
COREY E. DUNBAR (30144)
8311 Highway 23, Suite 104
Post Office Box 7125
Belle Chasse, LA 70037
Telephone: (504) 394-1870
Facsimile: (504) 393-2553
cdunbar@pivachlaw.com
*Attorneys for Plaintiff,*
*Tus' Investment, LLC*